**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JUSTIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:22-CV-375-JSD |
| v. | ) | |
| | ) | |
| JEFFERSON COUNTY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The matter is before the Court on Defendants Jacob Schurman ("Schurman") and Christopher Taylor's ("Taylor") Motion for Summary Judgment [ECF No. 114] and Defendants' Motion to Strike Plaintiff's Statement of Additional Facts Making Summary Judgment Inappropriate ("Motion to Strike) [ECF No. 122]. These matters are fully briefed and ready for disposition.  For the reasons stated herein, the Court grants the Defendants' Motion for Summary Judgment in whole and denies Defendants' Motion to Strike as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events giving rise to his Complaint, Plaintiff Justin Johnson ("Johnson") was a pretrial detainee in protective custody at the Jefferson County Jail, where Taylor and Schurman were employed as corrections officers.

The following are the material facts, which are either not in dispute or taken in the light most favorable to the non-moving party, Johnson.[1] In the early morning of March 31, 2021,

---

[1] The Court primarily takes the facts from Defendants' Statement of Uncontroverted Material Facts [ECF No. 116]. Although Johnson responded to these statements of facts, the issues he attempts to place in dispute are not dispositive of the outcome of this case and, therefore, are not material. *See Williams v. Medalist Golf, Inc.*, 910 F.3d 1041, 1045 (8th Cir. 2018); *see also* Fed. R. Civ. P. 56. As such, Defendants' Motion to Strike Plaintiff's Statement of Additional Facts Making Summary Judgment Inappropriate [ECF No. 122] is denied as moot.

Johnson was assaulted by fellow detainee Zachary Haferkamp ("Haferkamp"). Approximately two hours after the attack, Johnson notified jail employees and requested that he be placed in protective custody. In response, jail staff identified Haferkamp as Johnson's "enemy" in the Integrated Jail Management System ("IJMS") and moved Johnson to protective custody/lockdown pods where he was housed with another inmate named "Underwood." Later that same day, while still in protective custody/lockdown, Johnson asked Schurman, who was the floor officer, that he be allowed to leave his cell for recreation time. Schurman acquiesced and told Taylor, who was the control officer, to open Johnson's cell door. Taylor thereafter pressed the appropriate button and, after the door opened, Johnson exited his cell.

Fellow inmates Damien Hedrick ("Hedrick") and Theodore Mathias ("Mathias"), who were in protective custody as minors, were also outside of their cells at this time and, inexplicably, attacked Johnson. Remarkably, Johnson did not know Hedrick or Mathias before the attack, nor were they listed as "enemies" in his IJMS profile.

Johnson now raises claims against Schurman and Thomas for (1) violations of the Eighth and Fourteenth Amendments by failing to protect him pursuant to 42 U.S.C. § 1983[2]; and (2) for negligence under state law.[3] [ECF No. 1].

---

[2] Because Johnson was a pretrial detainee at the time of the alleged attack, this Court analyzes his claims under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. *See Holden v. Hirner*, 663 F.3d 336, 340–41 (8th Cir. 2011). However, this does not affect the Court's due process analysis. "A[n] individual's status as a pretrial detainee or arrestee does not affect [the] analysis of deliberate indifference." *Smith-Dandridge v. Geanolous*, No. 21-2459, 2024 WL 1337460, at *3 (8th Cir. Mar. 29, 2024) (applying Eighth Amendment deliberate indifference standard to an arrestee)); *see Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (stating that the distinction between the Fourteenth and Eighth Amendment "makes little difference as a practical matter . . . Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.").

[3] On December 9, 2022, Johnson filed his First Amended Complaint, alleging claims stemming from Mathias and Hedrick's March 31 attack [ECF No. 32]. On August 14, 2023, Johnson filed a Second Amended Complaint [ECF No. 94], which dismissed all but three defendants. On September 29, 2023, Johnson also voluntarily dismissed his claims against Defendant Tenesa Cash, leaving Defendant Schurman and Defendant Taylor as the only remaining defendants.

On October 5, 2023, Schurman and Taylor filed the instant Joint Motion for Summary Judgment, arguing that there are no genuine issues of material fact, and they are entitled to judgment as a matter of law because of the following: (1) Johnson's § 1983 claims are barred by qualified immunity; (2) Johnson's state law claims are barred by official immunity; and, (3) Johnson's state law claims are also barred by the public duty doctrine. [ECF No. 114]. For his part, Johnson wholly opposes the motion asserting, among other things, that Schurman and Taylor are not entitled to qualified immunity and official immunity, and that the public duty doctrine does not apply.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Green Plains Otter Tail, LLC v. Pro-Env't., Inc.*, 953 F.3d 541, 545 (8th Cir. 2020) (citing Fed. R. Civ. P. 56(c)). "A court considering a motion for summary judgment must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Dryer v. NFL*, 814 F.3d 938, 941-42 (8th Cir. 2016) (citing *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996)). "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials but must set forth specific facts in the record showing that there is a genuine issue for trial." *Id.* at 942 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "By its very terms, [Rule 56(c)(1) ] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine issue for trial." *Green Plains Otter Tail, LLC*, 953 F.3d at 545 (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)).

## DISCUSSION

**I.    Schurman and Taylor are entitled to qualified immunity on Johnson's § 1983 failure to protect claim.**

In his § 1983 claim, Johnson alleges a violation of his right to be protected from violence by other inmates under the Eighth and Fourteenth Amendments.[4] *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Specifically, Johnson asserts that Schurman and Taylor were deliberately indifferent to his safety because, while in protective custody, his cell door was opened, and two inmates attacked him. To further support this contention, Johnson maintains that there was an official policy requiring officers to open cell doors in the lockdown pod one door at a time. Schurman and Taylor dispute the existence of said policy and argue that they are immune from suit under the doctrine of qualified immunity. This Court agrees.

"Qualified immunity shields government officials performing discretionary functions from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity allows "officers to make reasonable errors . . .  and provides ample room for mistaken judgments." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011) (citing *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.1996); *Malley v. Briggs*, 475 U.S. 335, 343 (1986) (quotations omitted). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.  Critically, qualified immunity is "an immunity from suit rather than a

---

[4] Although his complaint alleges claims under both the Eighth and Fourteenth Amendments, Johnson, as a pretrial detainee, can maintain a cause of action under only the Fourteenth Amendment, as previously discussed. *See infra* at note 2.

mere defense to liability." *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004). To determine whether qualified immunity applies here, this Court must determine "(1) whether the facts that [Johnson] has alleged or shown make out a violation of a constitutional right, and (2) whether the right at issue was 'clearly established' at the time of [Schurman and Taylor's] alleged misconduct." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010).

Inmates have a clearly established constitutional right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Indeed, "[p]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Holden v. Hirner*, 663 F.3d 336, 340-41 (8th Cir. 2011). The question here is whether Johnson has adequately demonstrated that Schurman and Taylor violated that constitutional right. On that issue, a prison official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Vandevender*, 970 F.3d at 975 (citation omitted). Thus, Johnson's "failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry*, 226 F.3d at 977. Nevertheless, as "prisons are inherently dangerous environments, [i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Vandevender*, 970 F.3d at 976 (quotation marks omitted) (internal citations omitted).

**<u>Substantial Risk of Harm</u>**

As to the "substantial risk of harm" objective requirement of a failure to protect claim, the Eighth Circuit has previously held that a plaintiff has successfully established a substantial risk of harm to a victim in the following situations: (1) where "the attacker was known to be a volatile,

- 5 -

dangerous man," (2) where the attacker "previously threatened or fought with the victim," or (3) where the attack involved "a victim who should have been better protected because of known prior inmate threats." *Vandevender*, 970 F.3d at 976 (citing *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007); *Newman v. Holmes,* 122 F.3d 650, 651 (8th Cir. 1997); *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998); *Prater v. Dahm*, 89 F.3d 538, 540 (8th Cir. 1996); *Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016); *Pagels v. Morrison*, 335 F.3d 736, 739 (8th Cir. 2003)). In the alternative, a plaintiff can demonstrate a substantial risk due to a general risk of harm by "showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Notably, the Eighth Circuit has repeatedly "upheld the grant of qualified immunity from § 1983 damage claims to prison officials who allegedly failed to protect an inmate from another inmate's surprise attack." *Vandevender*, 970 F.3d at 976 (citing *Curry*, 226 F.3d at 978-79 (collecting cases)); *see also Jackson*, 140 F.3d at 1152 (cleaned up) ("[B]ecause prisons are dangerous places, housing the most aggressive among us and placing violent people in close quarters, ... prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another."). In several cases, the Eighth Circuit has found that a history of violence or animosity from the attacker is an important part of finding that an attack qualifies as a surprise. *See Curry*, 226 F.3d at 979; *see also Jackson,* 140 F.3d at 1152; *Prosser v. Ross,* 70 F.3d 1005, 1007 (8th Cir.1995); *Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir.1990); *Falls v. Nesbitt,* 966 F.2d 375, 378–79 (8th Cir.1992) (judgment for plaintiff on the merits reversed). For example, in *Curry*, the Eighth Circuit found that a substantial risk of harm did not exist in the event of a surprise attack where there was no evidence that the victim was "a likely target of inmate

- 6 -

violence," or that the attacker "harbored any animosity" toward the victim – even when the attacker had a history of violence and been convicted of murder. 226 F.3d at 978-79.

Similarly, here, Johnson has failed to demonstrate any evidence of a substantial risk of harm to him by Mathias and Hedrick prior to the assault. To be sure, this was an unfortunate, terrible event. Nevertheless, it was unmistakably also a surprise attack of the type contemplated by *Vandevender*, *Curry*, and *Jackson,* among others. The attackers here were not known to be volatile, dangerous, violent, or in protective custody for previous violent episodes. Unlike Haferkamp, they had not previously threatened Johnson or fought with him.  There were not any known threats to Johnson by either Mathias or Hedrick. There is no evidence that Johnson was a likely target of inmate violence by these individuals. Also, there is no evidence that Mathias and Hedrick harbored any animosity toward Johnson or had a history of violence.  In fact, Mathias and Hedrick were not listed as Johnson's enemies on his IJMS profile and were not known by him at all. Furthermore, Johnson provides no evidence showing that the assault here was in the context of a substantial risk of inmate attacks that were longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.

Also, Johnson's reliance on *Newman* is unavailing. 122 F.3d. 650. There, the relevant inmate was housed in a cell unit designed for known dangerous inmates. *Id*. at 651.  Moreover, the inmate was particularly dangerous and subject to extensive restrictions, such as feeding procedures and solitary confinement. *Id*. at 652. In this case, on the other hand, Mathias and Taylor were subject to no such restrictions, and there is no evidence that either of them had a history of exhibiting violent behavior.

**Deliberate Indifference**

As to the "deliberate indifference" subjective requirement of a failure to protect claim, the Eighth Circuit has held that a plaintiff successfully establishes that a defendant is deliberately indifferent to a substantial risk or harm to him by showing that the defendant has *knowledge* of the risk and disregards that risk. *Farmer*, 511 U.S. at 837. (emphasis added).  Moreover, "'[d]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." *Holden*, 663 F.3d at 341 (quoting *Jackson*, 140 F.3d at 1152 (citation and internal quotation omitted)). Mere negligence or inadvertence does not rise to the level of deliberate indifference. *See Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).  Moreover, "[s]uch reckless disregard is shown only where an official 'actually knows of the substantial risk and fails to respond reasonably to it.'" *Bloomer v. Missouri Dep't of Corr.*, No. 1:15CV174 RLW, 2017 WL 3129757, at *3 (E.D. Mo. July 21, 2017) (quoting *Young*, 508 F.3d at 873.).

Here, Johnson has failed to adequately show deliberate indifference to his safety as defined by the Eighth Circuit. Schurman and Taylor opened Johnson's cell door at his request.  He voluntarily then exited his cell. There is no evidence that Schurman or Taylor had any knowledge that Mathias and Hedrick were a threat or risk of harm to Johnson or any other inmates.  There is also no evidence that the two (2) assailants were identified as Johnson's enemies. Moreover, there is no evidence that Johnson ever voiced the need for protection from these individuals let alone even knew who they were.  Further, there is no evidence of negligence by Schurman and Taylor, but even if there were, any alleged negligence or inadvertence on their part is not enough to show deliberate indifference. *See Tucker v. Evans*, 276 F.3d 999 (8th Cir. 2002) (holding that the defendant is entitled to summary judgment on qualified immunity when inmate attacked other

inmate without warning). At best, Schurman and Taylor were aware that Johnson was in protective custody. However, his protective custody related to safeguarding from Haferkamp specifically, not Mathias or Taylor. Undoubtedly, like the facts as set forth in *Hewitt v. Chandler Flowers*, where the court granted prison guards' motion to dismiss a complaint alleging that they were deliberately indifferent when plaintiff was assaulted by other inmates, the horrible attack here was an isolated, surprise, and unprovoked assault. No. 2:22-CV-033-JMB, 2023 WL 3303289, at *2 (E.D. Mo. May 8, 2023).

Additionally, and contrary to his argument, Johnson has not shown the existence of an official policy requiring doors in the lockdown pod to be opened one at a time. Officers' testimony does not reflect such a policy, nor does the Jefferson County Sheriff's Office policy on prisoner movement. [*See* ECF Nos. 117-2, 117-3; *see also* ECF No. 122-2]. Even if Johnson had showed an official policy – which he has not – that is still insufficient because "violations of prison policy or regulations alone are not enough to establish deliberate indifference under the Eighth Amendment." *Vandevender*, 970 F.3d at 978; *see also Kulkay*, 847 F.3d at 645 ("[S]tate and federal safety regulations do not establish a standard for Eighth Amendment violations.").

Consequently, for the foregoing reasons, Johnson has not demonstrated that Schurman and Taylor were deliberately indifferent to a substantial risk of serious harm to him at the time of the attack. Therefore, because a rational trier of fact could not find that Schurman and Taylor violated Johnson's Due Process rights under the Fourteenth Amendment, Schurman and Taylor are immune from suit based upon qualified immunity, and Johnson's § 1983 claim fails as matter of law.

## II.  Schurman and Taylor are entitled to official immunity regarding Johnson's state law claims.

Johnson further alleges Missouri state law negligent claims against Schurman and Taylor.

Specifically, he asserts that Schurman and Taylor were negligent by: (1) failing to keep Johnson safe; (2) failing to keep Johnson separate from other inmates; (3) ordering the doors of Johnson's cell to be opened when it was not otherwise safe to do so; (4) ordering the doors of Johnson's cell to be opened in violation of jail policy; (5) opening Johnson's door when other inmates were freely roaming and/or walking around in that area; (6) failing to keep Johnson's door closed while other inmates were freely roaming and/or walking around in that area; (7) failing to secure the other inmates before opening Johnson's door; (8) failing to keep Johnson in protective custody; and (9) allowing other inmates to injure Johnson. Schurman and Taylor assert that the doctrine of official immunity bars these claims. This Court agrees.

"[O]fficial immunity 'protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 629 (8th Cir. 2021) (quoting *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 163 (Mo. 2021) (en banc)). Official immunity "does not apply to torts committed when acting in a ministerial capacity." *Ilgenfritz v. Tipler*, No. 2:06CV00055 ERW, 2009 WL 3160773, at *13 (E.D. Mo. Sept. 28, 2009) (citation omitted). "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Davis*, 11 F.4th at 630 (quotations omitted). "An act is discretionary… where there is any room whatsoever for variation in when and how a particular task can be done." *Id.* at 629. In contrast, a ministerial act "is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion

- 10 -

concerning the propriety of the act to be performed." *Ilgenfritz*, 2009 WL 3160773, at *13 (citation and internal quotation omitted).

The crux of Johnson's claims involves his theory that Schurman and Taylor's opening of his door while Mathias and Hedrick were out of their cells violated prison policy. Johnson relies heavily on *Balducci v. Missouri Dep't of Corr.*, No. 2:21-CV-04022-NKL, 2021 WL 4206623 (W.D. Mo. Sept. 15, 2021) where the court considered a motion to dismiss, found that the prison's policy of conducting timed checks of inmates was ministerial, and held that the defendant's liability based on not performing those timed checks was not barred by official immunity. *Id*. at *5. Johnson likens the facts of that case to the facts here.

Here, however, the evidence before the Court demonstrates that Schurman and Taylor's actions were discretionary. As previously stated, Johnson has not established that there was a prison policy requiring lockdown doors to be opened one at a time, as his arguments are conclusory and without support. [*See supra* pp. 8-9*; see also* ECF Nos. 117-2, 11703, Ex. 2-3; *see also* ECF No. 122-2]. Undeniably, Johnson fails to provide any evidence that such a policy exists or that officers had no variation in the direction of opening cell doors.

Moreover, even if Johnson had demonstrated a formal policy requiring Schurman and Taylor to open doors one at a time, that policy alone would not be enough to demonstrate that they did not retain discretion. "[E]ven when a clerical or ministerial act appears to be authorized or required by statute, official immunity will still apply if the official retains authority to decide when and how that act is to be done." *State ex rel. Alsup v. Kanatzar,* 588 S.W.3d 187, 193 (Mo. 2019); *see also Green v. Lebanon R-III Sch. Dist.,* 13 S.W.3d 278, 285 (Mo. 2000). In this case, Schurman and Taylor retained authority to decide when and how to allow Johnson to have recreation time. [*See* ECF No. 122, ¶¶ 27, 29]. In other words, both Schurman and Taylor's duties in moving

inmates within the jail, unlike the duties of the officers in *Balducci*, were untimed and have variation in how they may be performed, thereby requiring them to exercise their discretion. *See Davis*, 11 F.4th at 629.

Therefore, Johnson's state law negligence claims are barred by official immunity as a matter of law and Schurman and Taylor are entitled to summary judgment on their supplemental state law claims.

### III.    Johnson's state law claims are further barred by public duty doctrine.

Schurman and Taylor also assert that Johnson's state law negligence claims are also barred by the public duty doctrine. This Court agrees. The public duty doctrine delineates the scope of a public official's duty in a negligence claim, which requires a plaintiff to "establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's failure.'" *Ilgenfritz*, 2009 WL 3160773, at *7 (citing *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 463 (Mo. 1998) (en banc) (quoting *Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 710 (Mo. 1990) (en banc). In that context, "[t]he public-duty doctrine provides that a public employee is not civilly liable for the breach of a duty she [or he] owes to the general public rather than to a particular individual." *E.M. by & through McInnis v. Gateway Region Young Men's Christian Ass'n,* 613 S.W.3d 388, 396 (Mo. Ct. App. 2020). It is not an affirmative defense but comes into play "when injury to a particular, identifiable individual is reasonably foreseeable as a result of the public employee's breach of duty." *Id.* "The applicability of the public duty doctrine negates the duty element required to prove negligence, such that there can be no cause of action for injuries sustained as the result of an alleged breach of public duty to the community as a whole." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. banc 2008) (citing *Christine H. v. Derby Liquor*

*Store,* 703 S.W.2d 87, 89 (Mo. Ct. App. 1985).

Schurman and Taylor's citing of *Ilgenfritz,* a case on-point, is well-taken. There, the plaintiff inmate alleged that a corrections officer unlocked his cell door to allow other inmates to assault him on numerous occasions. *Ilgenfritz,* 2009 WL 3160773, at *7.  The district court granted summary judgment to the officer by finding that the plaintiff failed to establish that the officer had a legal duty to protect him from injury. *Id*. As referenced by Defendants, the court aptly stated:

> it cannot be said that there was a foreseeable likelihood that opening Plaintiff's cell door for Plaintiff's cellmate would result in the attack alleged by Plaintiff. As set forth by the Court in the preceding section, Defendant Tipler would have had no reason to suspect that Plaintiff's cellmate posed a threat to Plaintiff's safety, because Plaintiff's cellmate was not on his enemy list at the time of the alleged attack.

*Id*.

In contrast, Johnson again cites *Balducci,* 2021 WL 4206623, at *6.  However, *Balducci* is inapplicable as that case involved the failure to monitor a dangerous inmate with a known history of assault. Pointedly, after initially finding, among other things, that timed checks of known violent inmates were ministerial, the district court recognized that the goal of the defendant officers' ministerial actions was to protect individual prisoners and staff, not the safety of the public in general. *Id*. Thus, the district court concluded that the defendants owed a legal duty to those individuals and that it was reasonably foreseeable that an inmate would sustain injury from a breach of the officer's duty. *Id*.

Here, Schurman and Taylor owed no particular duty to Johnson greater than that of the prison population at large, nor was there any dereliction of said duty. Significantly, there was no known history of violence by either Mathias or Hedrick. Schurman and Taylor had no reason to believe Johnson was vulnerable or at risk to an attack by them. Indeed, there is no evidence of a foreseeable likelihood that Defendant's discretionary act of opening Johnson's cell door and allowing him to exit his cell would result in his attack. Again, notably, neither attacker was

identified as an enemy in Johnson's IJMS profile. *See Ilgenfritz*, 2009 WL 3160773, at *7 (finding that there would be no reason for an officer to suspect that a plaintiff's cellmate posed a risk because the cellmate "was not on his enemy list at the time of alleged attack."). As such, because the record demonstrates that Schurman and Taylor did not owe a legal duty to Johnson as an individual, they cannot be held civilly liable for his negligence claims. *See E.M. by & through McInnis,* 613 S.W.3d at 396. Schurman and Taylor, therefore, are entitled to summary judgment on their supplemental state law claims based on the public duty doctrine.

Accordingly,

      **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 114] is **GRANTED**. Judgment is entered in favor of Schurman and Taylor and against Johnson.

      **IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Statement of Additional Facts Making Summary Judgment Inappropriate [ECF No. 122] is **DENIED** as moot.

      **IT IS FINALLY ORDERED** that the Defendants' Consent Motion to Continue Trial Setting [ECF No. 130] is **DENIED** as moot.

      An appropriate Judgment is filed herewith.

                                    _____
                                      **JOSEPH S. DUEKER**
                                      **UNITED STATES MAGISTRATE JUDGE**

Dated this 3rd day of May, 2024.